UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DONTIE S. MITCHELL,

                              Plaintiff,

              v.

PAUL CHAPPIUS, JR., et al.,

                              Defendants.

_____

**DECISION AND ORDER**

6:17-CV-06673 EAW

## <u>INTRODUCTION</u>

Plaintiff Dontie S. Mitchell ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 asserting claims that arose while he was incarcerated at Collins Correctional Facility ("Collins"), Wende Correctional Facility ("Wende"), and Elmira Correctional Facility ("Elmira"). (Dkt. 1). Presently before the Court is a motion for partial summary judgment filed by defendants Paul Chappius, Jr. ("Superintendent Chappius"), J. Hughes ("Deputy Superintendent Hughes"), Pariso[1] ("Officer Pariso"), Arndt ("Officer Arndt"), Flint ("Officer Flint"), Stewart Eckert ("Superintendent Eckert"), Kevin J. Brown ("Deputy Superintendent Brown"), B.J. Gabel ("Deputy Superintendent Gabel"), T. Franclemont ("Assistant Deputy Superintendent Franclemont"), Meyer ("Captain Meyer"), Sowa ("Lieutenant Sowa"), Herzick ("Lieutenant Herzick"), Labedz ("Lieutenant Labedz"),

---

[1]    In the complaint, Plaintiff incorrectly names Pariso as "Pareso," Arndt as "Arnot," Meyer as "Meyers," Wilkins as "Wilkin," Roberts as "Robert," and Szablewski as "Szableski." (*See* Dkt. 1; Dkt. 76-4 at 6-7 (noting correct spelling)). The Court has used the correct spelling for these defendants. The Clerk of Court is directed to amend the caption to correct the spelling of these defendants' names.

Wilkins ("Senior Offender Rehabilitation Coordinator Wilkins"), Szablewski ("Senior Offender Rehabilitation Coordinator Szablewski"), B. Richardson ("Senior Offender Rehabilitation Coordinator Richardson"), and Roberts ("Sergeant Roberts") (collectively "Defendants"). (Dkt. 76).

Defendants do not move for summary judgment on Plaintiff's excessive force claim against Sergeant Roberts. (Dkt. 76-4 at 12). For the following reasons, Defendants' motion is granted except as to (1) the failure to protect claims against Officer Flint, Officer Pariso, and Officer Arndt; (2) the retaliation claims against Officer Flint, Officer Pariso, and Officer Arndt; and (3) the retaliation claim against Superintendent Eckert.

## BACKGROUND

### I.  Factual Background

The following facts are taken from Defendants' Local Rule 56 Statement of Facts (Dkt. 76-3), Plaintiff's response thereto (Dkt. 81), Plaintiff's complaint (Dkt. 1)[2], and the exhibits submitted by the parties. (Dkt. 76-1; Dkt. 76-2; Dkt. 80). The Court has noted relevant factual disputes.

---

[2]     The Court may cite to Plaintiff's verified complaint (*see* Dkt. 1 at 31) because "[a] plaintiff's verified complaint is to be treated as an affidavit," *Zielinksi v. Annucci*, No. 9:17-CV-1087 (GTS/CFH), 2020 WL 7074845, at *7 (N.D.N.Y. Nov. 12, 2020) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . .")); *see also Brandon v. Kinter*, 938 F.3d 21, 27 n.5 (2d Cir. 2019) ("Brandon's Amended Complaint was sworn under penalty of perjury. Therefore, his allegations in the complaint can be considered as evidence for summary judgment purposes.").

Plaintiff is in an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") who was housed at Collins, Wende, and Elmira.  (Dkt. 76-3 at ¶ 16; Dkt. 81 at ¶ 16).  From July 21, 2016, to September 7, 2017, Plaintiff filed 28 grievances, which the Court has summarized below.  (*See* Dkt. 76-3 at ¶¶ 19-111; Dkt. 81 at ¶¶ 19-111).

> ### A.     The Grievances

On July 21, 2016, Plaintiff filed a grievance concerning whether religious dietary law prevented Nation of Islam inmates from consuming soy products.  (Dkt. 76-1 at 402; Dkt. 76-3 at ¶ 111; Dkt. 81 at ¶¶ 19-111).

On August 21, 2016, Plaintiff filed a grievance alleging problems with opening the gym phones on time.  (Dkt. 76-3 at ¶ 107; Dkt. 81 at ¶¶ 19-111).  Plaintiff alleged that Officer Flint failed to open the phones on time but did not name any other officers or DOCCS staff.  (Dkt. 76-3 at ¶¶ 108-09; Dkt. 81 at ¶¶ 19-111).

Plaintiff filed three additional grievances related to the gym phones on August 25, 2016.  (Dkt. 76-3 at ¶¶ 102-05; Dkt. 81 at ¶¶ 19-111).  Plaintiff stated there were broken and missing phones in the gym, requested more phones, and reported again that Officer Flint did not open the phones in the gym on time.  (Dkt. 76-3 at ¶¶ 102-05; Dkt. 81 at ¶¶ 19-111).

On September 16, 2016, Plaintiff wrote a grievance about the cable and the impact on programming availability.  (Dkt. 76-1 at 375; Dkt. 76-3 at ¶¶ 99-100; Dkt. 81 at ¶¶ 19-111).  Plaintiff then filed another grievance relating to phone calls on September 29, 2016.

(Dkt. 76-3 at ¶ 98; Dkt. 81 at ¶¶ 19-111).  In this grievance, Plaintiff and several other inmates requested 30-minute phone calls.  (Dkt. 76-3 at ¶ 98; Dkt. 81 at ¶¶ 19-111).

On October 20, 2016, Plaintiff wrote a grievance requesting an early commissary buy on days he attended his voluntary group meetings.  (Dkt. 76-1 at 360; Dkt. 76-3 at ¶ 96; Dkt. 81 at ¶¶ 19-111).

Plaintiff then alleged in a grievance dated December 5, 2016, that he was being harassed because of his prior grievances about opening the gym phones.  (Dkt. 76-3 at ¶ 83; Dkt. 81 at ¶¶ 19-111).  Plaintiff alleged that officers referred to him as a "rat" and that officers placed him in danger by telling other inmates that Plaintiff was responsible for the 15-minute phone calls.  (Dkt. 76-3 at ¶¶ 84-85; Dkt. 81 at ¶¶ 19-111).

On December 16, 2016, Plaintiff filed a grievance concerning the denial of his appeal of a FOIL request.  (Dkt. 76-1 at 339; Dkt. 76-3 at ¶ 81; Dkt. 81 at ¶¶ 19-111).

In two letters dated March 15, 2017, and March 29, 2017, Plaintiff alleged that unnamed officers retaliated against him due to his grievances.  (Dkt. 76-3 at ¶ 71; Dkt. 81 at ¶¶ 19-111).  Plaintiff stated again that officers called him a "rat" and that officers said that "someone needed to do something to get rid of [Plaintiff] and shut [him] up."  (Dkt. 76-3 at ¶¶ 72-74; Dkt. 81 at ¶¶ 19-111).  On March 13, 2017, Plaintiff claimed he was slashed in the face by "unknown assailants" and called a "rat."  (Dkt. 76-3 at ¶ 73; Dkt. 81 at ¶¶ 19-111).  Plaintiff alleged he was given a misbehavior report to cover up what happened.  (Dkt. 76-3 at ¶ 75; Dkt. 81 at ¶¶ 19-111).  Plaintiff did not provide the names of any witnesses or officers.  (Dkt. 76-3 at ¶ 78; Dkt. 81 at ¶¶ 19-111).  As a result, the

investigating sergeant was not able to interview any witnesses related to this grievance. (Dkt. 76-3 at ¶ 79; Dkt. 81 at ¶¶ 19-111).

In a series of several letters, dated May 25, 2017, to June 4, 2017, Plaintiff alleged that Sergeant Roberts assaulted him after Plaintiff looked at Sergeant Roberts' nametag. (Dkt. 76-3 at ¶¶ 57-58; Dkt. 81 at ¶¶ 19-111).  Plaintiff also stated that he received a urinalysis test and cell frisks.  (Dkt. 76-3 at ¶ 59; Dkt. 81 at ¶¶ 19-111).  Plaintiff asserted that the test and frisks were "suspicious," but did not state that they were retaliatory.  (Dkt. 76-3 at ¶ 60; Dkt. 81 at ¶¶ 19-111).

On May 31, 2017, Plaintiff filed a grievance alleging that Sergeant Roberts stared menacingly at Plaintiff.  (Dkt. 76-3 at ¶ 69; Dkt. 81 at ¶¶ 19-111).  This grievance also repeated Plaintiff's claim that Sergeant Roberts attacked him on May 25, 2017.  (Dkt. 76-3 at ¶ 69; Dkt. 81 at ¶¶ 19-111).  Plaintiff complained on June 4, 2017, that he was not allowed to have his hair braided into corn rolls.  (Dkt. 76-3 at ¶ 63; Dkt. 81 at ¶¶ 19-111).

Plaintiff filed another grievance on June 5, 2017, stating that he lost his "IPA certification."[3]  (Dkt. 76-3 at ¶ 67; Dkt. 81 at ¶¶ 19-111).  On June 8, 2017, Plaintiff alleged that he did not have access to "rehabilitative treatment and programs."  (Dkt. 76-3 at ¶ 65; Dkt. 81 at ¶¶ 19-111).

From June 5, 2017, to June 12, 2017, Plaintiff wrote another series of letters alleging retaliatory urinalysis tests and cell searches because of his grievances.  (Dkt. 76-3 at ¶¶ 53-

---

[3]     It is not clear from the record what an "IPA certification" is.

54; Dkt. 81 at ¶¶ 19-111).  Plaintiff named Lieutenant Herzick and Sergeant Roberts in these grievances.  (Dkt. 76-3 at ¶ 55; Dkt. 81 at ¶¶ 19-111).

Plaintiff filed another grievance on July 16, 2017, arguing that he was placed in the special housing unit ("SHU") as harassment and in retaliation for his grievances.  (Dkt. 76-3 at ¶ 51; Dkt. 81 at ¶¶ 19-111).  Plaintiff also noted that Deputy Superintendent Gabel refused to let him assist his stepbrother with a lawsuit.  (Dkt. 76-3 at ¶ 51; Dkt. 81 at ¶¶ 19-111).

In letters dating July 19, 2017, to July 23, 2017, Plaintiff alleged that he received a misbehavior report that was improperly classified, that Deputy Gabel, Senior Offender Rehabilitation Coordinator Wilkins, and Senior Offender Rehabilitation Coordinator Richardson wrote misbehavior reports against Plaintiff as harassment and in retaliation for his grievances, and that the misbehavior reports should be combined into a single hearing as they stemmed from a single investigation.  (Dkt. 76-3 at ¶¶ 47-49; Dkt. 81 at ¶¶ 19-111).

On July 19, 2017, Plaintiff alleged that he received "another retaliatory cell search for exercising [his] First Amendment rights."  (Dkt. 76-3 at ¶ 45; Dkt. 81 at ¶¶ 19-111).  Plaintiff further stated that "the Superintendent is allowing it."  (Dkt. 76-3 at ¶ 45; Dkt. 81 at ¶¶ 19-111).  Plaintiff then claimed that Superintendent Eckert was allowing the continued harassment of and retaliation against Plaintiff by staff on July 19, 2017.  (Dkt. 76-3 at ¶ 41; Dkt. 81 at ¶¶ 19-111).  Plaintiff stated he had been subject to assault, retaliatory disciplinary action, improper keeplock and SHU placement, intimidation, retaliatory cell searches and urinalysis tests, and a retaliatory mail watch.  (Dkt. 76-3 at ¶ 42; Dkt. 81 at ¶¶ 19-111).

On July 26, 2017, Plaintiff filed a grievance complaining about the denial of his request for a reduction in his SHU penalty.  (Dkt. 76-3 at ¶ 38; Dkt. 81 at ¶¶ 19-111).

In two separate grievances dated July 26, 2017, Plaintiff alleged that Superintendent Eckert imposed a retaliatory mail watch for the grievances Plaintiff wrote and argued that a prior grievance was incorrectly coded.  (Dkt. 76-3 at ¶¶ 34, 36; Dkt. 81 at ¶¶ 19-111).

On August 6, 2017, Plaintiff filed a grievance about an incident he had with a "boss chair" and alleged he was wrongfully placed on contraband watch.  (Dkt. 76-3 at ¶ 32; Dkt. 81 at ¶¶ 19-111).  Plaintiff then complained that he had not received receipt of his grievances on August 28, 2017.  (Dkt. 76-3 at ¶ 24; Dkt. 81 at ¶¶ 19-111).

In a grievance dated August 30, 2017, Plaintiff contended that his keeplock disposition was incorrect.  (Dkt. 76-3 at ¶¶ 28-29; Dkt. 81 at ¶¶ 19-111).  Plaintiff argued that his keeplock should have been 12 days rather than 13 days.  (Dkt. 76-3 at ¶¶ 28-29; Dkt. 81 at ¶¶ 19-111).  In another grievance dated August 30, 2017, Plaintiff claimed that his radio jack was broken.  (Dkt. 76-3 at ¶ 26; Dkt. 81 at ¶¶ 19-111).

On August 31, 2017, Plaintiff alleged harassment because of a letter Plaintiff wrote to the New York Civil Liberties Union.  (Dkt. 76-3 at ¶ 22; Dkt. 81 at ¶¶ 19-111).

Finally, Plaintiff filed a grievance on September 7, 2017, concerning the books and magazines on the library cart.  (Dkt. 76-3 at ¶ 20; Dkt. 81 at ¶¶ 19-111).

### B.   **Plaintiff's Testimony and Allegations**

In 2016, and as discussed above, Plaintiff filed grievances about the need to add more phones for prisoner use at Elmira.  (Dkt. 1 at ¶ 39).  Plaintiff continued to file similar grievances about phone use and Officer Flint.  (*Id.* at ¶ 45).  Plaintiff was then attacked by

unknown assailants for filing these grievances on March 13, 2017. (*Id.* at ¶ 53; *see* Dkt. 81 at ¶ 113). This attack was the result of multiple officers, including Officer Flint, Officer Pariso, Officer Arndt, and Officer Simpson, attempting to rile up other prisoners against Plaintiff. (Dkt. 1 at ¶ 50).

Plaintiff was issued a misbehavior report for this attack. (*Id.* at ¶ 55). According to Plaintiff, the disciplinary hearing presided over by Deputy Superintendent Hughes on the misbehavior report that occurred after Plaintiff wrote grievances about Officer Flint was "a continuation of the retaliation by prison staff to punish and deter Plaintiff from filing further grievances." (Dkt. 81 at ¶ 113).

On May 25, 2017, Plaintiff was leaving his block for a meal when Sergeant Roberts stopped him and asked what he had in his pocket. (Dkt. 1 at ¶ 56). Plaintiff was carrying an address book, which Sergeant Roberts threw on the floor. (*Id.* at ¶ 58). Plaintiff then picked up his address book and decided to go back to his block. (*Id.* at ¶ 60). He looked at Sergeant Roberts' name tag, resulting in Sergeant Roberts getting angry and punching Plaintiff on the right side of his head. (*Id.*). Plaintiff wrote a grievance about Sergeant Roberts, then wrote another grievance after Sergeant Roberts stared at Plaintiff menacingly. (*Id.* at ¶ 63).

Plaintiff testified at his deposition that his cell was searched after he wrote the grievances against Sergeant Roberts, and that he was keeplocked and subjected to a "constant barrage of harassment." (Dkt. 76-1 at 451). In addition, Plaintiff was subjected to cell searches and urinalysis tests. (Dkt. 1 at ¶ 66). Plaintiff then sent a letter to Superintendent Eckert about the grievances he filed. (Dkt. 81 at ¶ 114; Dkt. 1 at ¶ 69).

On June 26, 2017, Superintendent Eckert authorized a mail watch on Plaintiff's incoming and outgoing mail. (Dkt. 1 at ¶ 70). Around this time, Plaintiff also sought permission to assist his stepbrother in a lawsuit. (*Id.* at ¶ 72). Deputy Superintendent Gabel denied this request, though she routinely granted such requests for other prisoners. (*Id.*). Plaintiff testified that Deputy Superintendent Gabel discriminated against him and that he "had nothing personal with her." (Dkt. 76-3 at ¶ 120; Dkt. 81 at ¶ 120). Further, Plaintiff testified that he did not suffer injury because of his interactions with Deputy Superintendent Gabel. (Dkt. 76-3 at ¶ 121; Dkt. 81 at ¶ 121).

Plaintiff was then issued two misbehavior reports designated Tier III and one misbehavior report designated Tier II. (Dkt. 76-3 at ¶¶ 76-77; Dkt. 81 at ¶¶ 76-77). Plaintiff testified that the misbehavior reports, and their classification as Tier II and III, resulted in him going to solitary confinement. (Dkt. 76-1 at 461). He further alleged in his complaint that Lieutenant Sowa misdesignated the first two misbehavior reports as Tier III. (Dkt. 1 at ¶ 79). Plaintiff testified that Lieutenant Sowa, as the reviewing officer, "should have known that those misbehavior reports were either retaliatory or they weren't as serious as [she] had classified them because they ended up being responsible for why [Plaintiff] ended up going to solitary confinement." (Dkt. 76-3 at ¶ 123; Dkt. 81 at ¶ 123).

Plaintiff did not testify at his deposition that Senior Offender Rehabilitation Coordinator Szablewski or Assistant Deputy Superintendent Franclemont retaliated against him. (*See* Dkt. 76-1 at 404-68). Plaintiff stated that he did not have personal problems with these defendants, but believed the misbehavior reports on which the disciplinary hearings were based were retaliatory and that Senior Offender Rehabilitation Coordinator

Szablewski and Assistant Deputy Superintendent Franclemont did not do their jobs.  (*See* Dkt. 81 at ¶ 124).

Plaintiff testified that Superintendent Eckert was not responsive to letters Plaintiff sent concerning harassment.  (Dkt. 76-1 at 450).  Further, Plaintiff testified that Superintendent Eckert should have done more because "[h]e's the chief officer of the facility."  (*Id.* at 451).

Plaintiff did not file any grievances against Superintendent Chappius.  (Dkt. 76-3 at ¶ 18; Dkt. 81 at ¶ 18).  Plaintiff in his deposition could not recall why he named Superintendent Chappius as a Defendant.  (Dkt. 76-1 at 466).

Plaintiff did not testify at his deposition to any evidence about a conspiracy.  (*See id.* at 404-68).  Plaintiff's complaint alleges that "Sowa, Wilkin[s], Richardson, Dep. Gabel (especially), Szablewski, Franclemont, and Labedz were under orders to take what they knew were retaliatory actions against [Plaintiff] with the aim to silence and get rid of him." (Dkt. 1 at ¶ 88).

## II.    Procedural Background

Plaintiff originally filed his complaint in the United States District Court for the Northern District of New York.  (Dkt. 1).  On September 27, 2017, Judge Thomas J. McAvoy granted Plaintiff leave to proceed *in forma pauperis* and ordered that the claims against Defendants be severed and transferred to this District.  (Dkt. 13).

Following the transfer, Judge Michael A. Telesca screened Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and held that the following claims were sufficient to survive initial review and proceed to service:

- An excessive force claim against Sergeant Roberts;

- Failure to protect claims against Officer Pariso, Officer Arndt, Officer Flint, and non-moving defendant Simpson ("Officer Simpson")[4];

- First Amendment retaliation claims against Officer Pariso, Officer Arndt, Officer Flint, Officer Simpson, Sergeant Roberts, Superintendent Eckert, Deputy Superintendent Gabel, Deputy Superintendent Hughes, Lieutenant Labedz, Lieutenant Sowa, Lieutenant Herzick, Captain Meyer, Senior Offender Rehabilitation Coordinator Richardson, Senior Offender Rehabilitation Coordinator Wilkins, Senior Offender Rehabilitation Coordinator Szablewski, and Assistant Deputy Superintendent Franclemont;

- Eighth Amendment conditions of confinement and failure to protect claims against Superintendent Eckert and Superintendent Chappius; and

- Conspiracy claims against Deputy Superintendent Brown, Deputy Superintendent Gabel, Captain Meyer, Senior Offender Rehabilitation Coordinator Wilkins, Senior Offender Rehabilitation Coordinator Richardson, Senior Offender Rehabilitation Coordinator Szablewski, Assistant Deputy Superintendent Franclemont, and Lieutenant Labedz.

(Dkt. 17 at 17, 24-25).

Judge Telesca dismissed without prejudice and with leave to replead Plaintiff's Eighth Amendment conditions of confinement claims and Fourteenth Amendment Due

---

[4]     Counsel for Defendants does not represent Officer Simpson because there has not been a request for representation, and he has not yet been served.  (*See* Dkt. 76-4 at 7).

Process claims against Deputy Superintendent Hughes, Senior Offender Rehabilitation Coordinator Szablewski, and Assistant Deputy Superintendent Franclemont. (*Id.* at 25). Additionally, Judge Telesca dismissed with prejudice the Fourteenth Amendment Due Process claim against Lieutenant Labedz and the official capacity claims for monetary damages against all Defendants. (*Id.*). Plaintiff did not file an amended complaint.

On July 10, 2019, Plaintiff filed a motion to appoint counsel, which the Court granted. (Dkt. 34; Dkt. 40). On January 22, 2020, Lesley E. Niebel, Esq. of the law firm Faraci Lange, LLP, was appointed to represent Plaintiff. (Dkt. 42). The case was reassigned to the undersigned on March 23, 2020. (Dkt. 46).

On September 22, 2023, Defendants filed the instant motion for partial summary judgment. (Dkt. 76). Plaintiff filed his response papers on November 29, 2023. (Dkt. 80; Dkt. 81; Dkt. 82). Defendants did not file a reply.

## DISCUSSION

### I.   Legal Standards

#### A.   Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, it finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B.    Section 1983 Claims

"To succeed on a section 1983 claim, Plaintiff must prove two essential elements: (1) defendants [] acted under color of state law; and (2) as a result of their actions, Plaintiff suffered a denial of his federal statutory or constitutional rights or privileges." *Sampson v. City of Schenectady*, 160 F. Supp. 2d 336, 342 (N.D.N.Y. 2001); *see Annis v. County of*

*Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must show the "personal involvement of defendants in alleged constitutional deprivations." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). The theory of respondeat superior is not available in a § 1983 action. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004). "Instead, a plaintiff must . . . prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

## II.   <u>Exhaustion of Administrative Remedies</u>

Defendants argue that they are entitled to summary judgment on Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies. (Dkt. 76-4 at 7). Specifically, Defendants claim Plaintiff failed to exhaust his administrative remedies as to: (1) the failure to protect claims against Officer Pariso, Officer Arndt, and Officer Flint; (2) the First Amendment retaliation claims against Officer Pariso, Officer Arndt, Officer Flint, Deputy Superintendent Hughes, Lieutenant Labedz, Senior Offender Rehabilitation Coordinator Szablewski, and Assistant Deputy Superintendent Franclemont; (3) the Eighth Amendment conditions of confinement and failure to protect claims against Superintendent Chappius; and (4) the conspiracy claims against Deputy Superintendent Brown, Deputy

Superintendent Gabel, Captain Meyer, Senior Offender Rehabilitation Coordinator Szablewski, Senior Offender Rehabilitation Coordinator Wilkins, Senior Offender Rehabilitation Coordinator Richardson, Assistant Deputy Superintendent Franclemont, and Lieutenant Labedz.

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

To satisfy the PLRA's exhaustion requirement, a plaintiff must demonstrate the "proper exhaustion of administrative remedies."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'"  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  As such, "[t]he exhaustion inquiry . . . requires that [the court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures."  *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009).

"Exhaustion is mandatory—unexhausted claims may not be pursued in federal court."  *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011).  However, "[f]ailure to exhaust administrative remedies is an affirmative defense . . . and when raised as a basis for summary judgment, the defendant 'bears the initial burden of establishing, by pointing to

legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute.'" *Deleon v. Ayers*, No. 16-CV-6848L, 2023 WL 171889, at *2 (W.D.N.Y. Jan. 12, 2023) (quoting *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)).

In New York, proper exhaustion entails going through a three-step appeal procedure set out in 7 N.Y.C.C.R. § 701.5. *Garraway v. Smith*, No. 12-CV-924S, 2020 WL 491328, at *4 (W.D.N.Y. Jan. 30, 2020). This section provides:

> (1) the inmate must submit a written complaint to the Grievance Clerk within 21 calendar days of the alleged occurrence; the Grievance Clerk then submits the complaint to the Inmate Grievance Resolution Committee ("IGRC") for investigation and review; (2) if the IGRC denies the grievance, the inmate may appeal to the superintendent of the facility by filing an appeal with the [Grievance Clerk]; (3) after the superintendent issues a decision, the inmate may appeal to the Central Office Review Committee ("CORC"), which makes the final administrative determination.

*Id.* An inmate may only seek relief under § 1983 "[i]f all three levels of review are exhausted." *Id.*

"[I]nmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004). DOCCS Directive 4040, which Defendants have submitted in support of their motion, pertains to the Inmate Grievance Program, and requires that the contents of the grievance "contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint." (Dkt. 76-2 at 14). "This requirement, the Second Circuit has held, is analogous to the requirements of notice pleading." *Solano v. Aubin*, No. 9:20-CV-1378

(BKS/ML), 2023 WL 5200397, at *5 (N.D.N.Y. Aug. 14, 2023) (citing *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)).  "As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief[;] [a]ll the grievance need do is object intelligibly to some asserted shortcoming."  *Johnson*, 380 F.3d at 697 (quotation omitted).

DOCCS Directive 4040 does not require that inmates name specific defendants. (*See* Dkt. 76-2 at 14); *see also Solano*, 2023 WL 5200397, at *5 ("a grievance need not identify parties by name").  Nor does the PLRA itself impose a "name all defendants" requirement.  *Jones v. Bock*, 549 U.S. 199, 217 (2007).

In support of their argument that Plaintiff failed to exhaust his administrative remedies, Defendants attach Plaintiff's Inmate Grievance History.  (*See* Dkt. 76-1 at 9-401).  This shows 28 compiled grievances filed by Plaintiff between July 21, 2016, and September 7, 2017.  (*See id.*).  The grievances are accompanied by sworn Certifications from Andrea Nicaud, Joyce Krygier, and Misty L. O'Dell certifying that the records were kept in the regular course of business.  (*Id.* at 7, 72, 322).

### A.   Failure to Protect Claims Against Officer Flint, Officer Pariso, and Officer Arndt

Plaintiff claims that Officer Flint, Officer Pariso, and Officer Arndt "incit[ed] other inmates to commit violence against him."  (Dkt. 17 at 13).  Defendants argue that Plaintiff failed to properly exhaust his claim that Officers Flint, Pariso, and Arndt incited other incarcerated individuals to attack him while he was housed at Elmira.  (Dkt. 76-4 at 15).  Defendants contend that Plaintiff failed to identify Officer Pariso and Officer Arndt in the

grievances he filed.  (*Id.* at 16).  Defendants also argue that although Plaintiff identified Officer Flint in his grievances, Plaintiff failed to put Officers Pariso, Arndt, and Flint on notice of the claims and allegations against them.  (*Id.* at 17).

Plaintiff argues in opposition that he filed several grievances relating to the phone situation, and that these grievances specifically identified Officer Flint as the individual who "would not open the gym phones in an expedient manner, creating a security risk in the facility." (Dkt. 82 at 15-16).  Plaintiff notes that he identified that he was being harassed by officers on the "3-11 shift in the gym" due to these grievances, and that he testified at his deposition that those officers were Pariso and Arndt.  (*Id.* at 16).

The Court finds that Defendants have not demonstrated as a matter of law that Plaintiff failed to exhaust his administrative remedies with respect to this claim.  Plaintiff filed five grievances related to the phone situation.  (*See* Dkt. 76-1 at 9-402).  On August 23, 2016, and August 25, 2016, Plaintiff filed two grievances alleging that Officer Flint did not open the phones in the gym on time.  (*Id.* at 377-400).  Plaintiff then stated on October 3, 2016, that inmates were only receiving 15-minute phone calls in retaliation for Plaintiff's prior grievances.  (*Id.* at 362-73).

On December 5, 2016, Plaintiff stated that he was being harassed because of the grievances he wrote about the phone situation.  (*Id.* at 341-58).  He noted that officers on the 3-11 shift had been giving Plaintiff flack, that one officer called him a "rat," and that officers were trying to "rile other prisoners against [Plaintiff] by saying that [he is] the one responsible for the 15 minute phone calls."  (*Id.* at 346-49).

Finally, Plaintiff asserted on March 15, 2017, that he was "slashed in the face, called a 'rat,' and beaten unconscious" because "certain officers" had told other inmates that Plaintiff was a "rat" for submitting grievances. (*Id.* at 330). Further, Plaintiff stated that he "no longer wished to cooperate with the grievance investigation." (*Id.* at 335).[5] For each of these grievances, Plaintiff followed the three-step grievance procedure. (*See id.* at 324-400).

Although Plaintiff did not identify specific witnesses in his grievances, Plaintiff identified "officers on the 3-11 shift," alerting prison officials to which officers Plaintiff was referring in his grievances. Plaintiff further identified Officer Flint and noted the specific time, place, and manner of his alleged assault. Taken together, this is sufficient information to have allowed prison officials to discover the staff members allegedly involved in the incident. *See Espinal*, 558 F.3d at 127 (noting that prison officials only need "the necessary information to investigate the complaints and the opportunity to learn which officers were involved in the alleged incident").

Defendants cite *Luckerson v. Goord*, No. 00 Civ. 9508 (JSR), 2002 WL 1628550 (S.D.N.Y. July 22, 2002), for the proposition that a plaintiff fails to exhaust his administrative remedies when the grievance filed does not set forth the nature of the allegations, claims, and remedies sought in the lawsuit. *Luckerson* is distinguishable. There, the plaintiff was granted the only relief he sought in his grievance, for the facility

---

[5]   Defendants do not argue that this statement by Plaintiff is sufficient to establish a failure to exhaust, nor do they identify any evidence indicating that Plaintiff actually failed to cooperate in any investigation.

to be asbestos tested. *Id.* at *2. The plaintiff failed to allege any defendant's personal involvement or deliberate indifference to the plaintiff's rights. *Id.* at *1. Here, Plaintiff not only identified Officer Flint and officers on the 3-11 shift, but he also alleged facts indicating the officers in question failed to protect Plaintiff. (*See* Dkt. 76-1 at 346-49). Specifically, Plaintiff stated that the officers were trying to "rile other prisoners against [him]" and were "endangering [his] well-being." (*Id.* at 346).

Defendants also cite *Turner v. Goord*, 376 F. Supp. 2d 321, 324 (W.D.N.Y. 2005), arguing that just because a plaintiff filed some grievance does not mean that he can sue anyone related to the events giving rise to that grievance. But unlike the plaintiff in *Turner* who filed only one grievance naming one specific defendant, Plaintiff filed numerous grievances about the phone situation and the subsequent alleged name-calling and assault, and stated in those grievances that multiple officers were involved in the misconduct. (*See* Dkt. 76-1 at 324-400).

*Brewer v. Jones*, No. 02 Civ. 3570, 2004 WL 235269 (S.D.N.Y. Feb. 5, 2004), also relied on by Defendants, is equally inapposite. There, the plaintiff testified at his deposition "that he did not file grievances against any defendant other than defendant Jones," and his grievance contained "only a vague reference to DOCCS officers other than Jones[.]" *Id.* at *2. No comparable facts are present here.

Defendants argue that Plaintiff's "claim that he feared further retaliation if he named the officers does not excuse his failure to properly grieve these allegations." (Dkt. 76-4 at 18). This argument is unavailing because Plaintiff did adequately grieve his allegations related to the alleged failure to protect, and thus no excuse is needed.

- 20 -

In sum, Defendants have not demonstrated as a matter of law that Plaintiff failed to exhaust his failure to protect claims against Officers Flint, Pariso, and Arndt. Defendants' request for summary judgment on this basis is denied.

## B.   Retaliation Claims Against Officer Flint, Officer Pariso, and Officer Arndt

For the same reasons as with respect to the failure to protect claims, Defendants argue the retaliation claims against Officer Flint, Officer Pariso, and Officer Arndt should be dismissed for failure to exhaust administrative remedies. (*Id.* at 19). Plaintiff again argues that the grievances he filed were sufficient to put prison officials on notice of these claims. (Dkt. 82 at 15-16).

For the reasons it has laid out in detail above, the Court denies Defendants' request for summary judgment on this basis. Plaintiff filed a grievance complaining that he was being harassed because of the grievances he wrote about the phone situation. (Dkt. 76-1 at 341-58). He noted that officers on the 3-11 shift had been giving him flack for identifying Officer Flint as the responsible officer, that one officer called him a "rat," and that officers were trying to "rile other prisoners against [Plaintiff] by saying that [he is] the one responsible for the 15 minute phone calls." (*Id.* at 346-49). Defendants have failed to demonstrate that this information was inadequate to allow prison officials to understand the issue and take appropriate remedial measures.

## C.   Retaliation Claim Against Deputy Superintendent Hughes

Plaintiff claims that Deputy Superintendent Hughes retaliated against him for pleading "not guilty" to the March 13, 2017, misbehavior report by denying him the ability

to present evidence, demonstrating bias against him, and imposing a lengthier sentence on him than one of the assailants. (*See* Dkt. 1 at ¶¶ 53-55). Defendants argue that Deputy Superintendent Hughes was not put on notice of Plaintiff's allegations against her because Plaintiff's grievances do not identify Deputy Superintendent Hughes nor allege that Deputy Superintendent Hughes retaliated against Plaintiff at the disciplinary hearing. (Dkt. 76-4 at 19-20). Plaintiff argues that he filed a grievance about the misbehavior report in addition to challenging the disposition issued by Deputy Superintendent Hughes. (Dkt. 82 at 17).

The Court agrees with Defendants. Plaintiff did not mention Deputy Superintendent Hughes or the manner in which she conducted the disciplinary hearing in any of his grievances. (*See* Dkt. 76-1 at 9-402). The grievance that Plaintiff cites concerning the March 13, 2017, misbehavior report (*see* Dkt. 82 at 12-13) stated that he "received a misbehavior report . . . although [he] clearly was the victim of an unprovoked, vicious attack." (Dkt. 76-1 at 331). While Plaintiff did allege that the sentence he received for this misbehavior report was "disproportional," he stated that this was because "[a]ll the reports written about the incident were written to conceal the fact [he] was injured so badly that it was not likely [he] was an equal participant in any fight." (*Id.* at 331-32).

This grievance thus appears aimed at the staff members who wrote the misbehavior report and fails to make any mention of Deputy Superintendent Hughes' alleged retaliatory behavior at the disciplinary hearing. (*See id.*). Therefore, Plaintiff failed to exhaust his administrative remedies because Plaintiff neither identified Deputy Superintendent Hughes nor provided any information in his grievances that would alert prison officials that

Plaintiff was complaining about the manner in which Deputy Superintendent Hughes conducted the disciplinary hearing.

### D.   Retaliation Claim Against Lieutenant Labedz

Plaintiff claims that Lieutenant Labedz "knew a misbehavior report on which he held a hearing was false but found [Plaintiff] guilty in retaliation for his filing of grievances." (Dkt. 76-4 at 26). Defendants contend that the retaliation claim against Lieutenant Labedz should be dismissed for failure to exhaust because Plaintiff failed to grieve his claim. (*Id.*). Specifically, Defendants argue that there are no allegations in Plaintiff's grievances against Lieutenant Labedz. (*Id.*). Plaintiff does not directly respond to Defendants' argument. (*See* Dkt. 82).

The Court finds this claim unexhausted. Only one of Plaintiff's grievances concerned Lieutenant Labedz. (*See* Dkt. 76-1 at 9-401). In that grievance, Plaintiff contended that he received 13 days in keeplock rather than the 12 days in keeplock Lieutenant Labedz originally gave Plaintiff. (Dkt. 76-2 at 54). Plaintiff did not claim that Lieutenant Labedz retaliated against him, nor did he allege facts that would raise an inference of retaliation. (*See id.*). None of Plaintiff's other grievances alleged facts sufficient to put prison officials on notice of Plaintiff's retaliation claim against Lieutenant Labedz. Thus, Plaintiff has failed to exhaust his administrative remedies as to this claim.

### E.   Retaliation Claims Against Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy Superintendent Franclemont

Plaintiff claims that Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy Superintendent Franclemont retaliated against him for filing grievances

by imposing "grossly disproportionate sentences for their guilty findings on Plaintiff's mail infractions[.]"  (Dkt. 17 at 17).  Defendants argue that Plaintiff failed to properly exhaust these claims, because they are not mentioned in any of his grievances.  (Dkt. 76-4 at 25). Plaintiff contends that he filed grievances relating to the designation of those misbehavior reports and the penalty imposed following his disciplinary hearing.  (Dkt. 82 at 17).

The Court finds that Defendants have not established their entitlement to summary judgment based on failure to exhaust these claims.  On July 29, 2017, Senior Offender Rehabilitation Coordinator Szablewski found Plaintiff guilty of violating Prison Rule 105.14.  (Dkt. 80 at 53-70).  Assistant Deputy Superintendent Franclemont found Plaintiff guilty of violating Prison Rules 103.20 and 180.11 on July 20, 2017.  (*Id.* at 74-86).  These violations resulted in Plaintiff being placed in SHU.  (Dkt. 76-1 at 461).

Plaintiff filed several grievances related to the misbehavior reports and disciplinary hearings.  (*See id.* at 9-401).  On July 23, 2017, Plaintiff filed a grievance alleging that "the Review Officer improperly made this misbehavior report a Tier III," referring to the misbehavior report about the violation of Prison Rule 105.14.  (*Id.* at 167).  Plaintiff further claimed on July 25, 2017, that the misbehavior reports relating to violations of Prison Rules 103.20 and 180.11 should have been designated as Tier I.  (*Id.*).

On July 19, 2017, Plaintiff complained that he had been subjected to "retaliatory disciplinary action."  (*Id.* at 130).  Finally, on July 26, 2017, Plaintiff requested that Superintendent Eckert reduce Plaintiff's Tier III and SHU penalty.  (*Id.* at 106-07). Plaintiff appealed each of these grievances in accordance with the three-step grievance procedure.  (*See id.* at 101-82).

Plaintiff identified the specific problem—retaliatory disciplinary action—in these grievances.  In particular, Plaintiff filed several grievances alerting prison officials that he was claiming he had been subject to retaliatory disciplinary action due to filing grievances, resulting in him being placed in SHU.  Plaintiff even pointed to the specific misbehavior reports, which can be tied directly back to Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy Superintendent Franclemont.  Thus, summary judgment is not warranted in favor of Defendants on these claims based on failure to exhaust administrative remedies.

F.    **Eighth Amendment Conditions of Confinement and Failure to Protect Claims Against Superintendent Chappius**

Plaintiff alleges that Superintendent Chappius allowed "a policy [of] widespread inmate abuse by facility staff."  (Dkt. 17 at 21).  Based on this allegation, Plaintiff was permitted to proceed on Eighth Amendment conditions of confinement and failure to protect claims against Superintendent Chappius.  (*Id.* at 25).  Defendants argue that the Eighth Amendment conditions of confinement and failure to protect claims against Superintendent Chappius should be dismissed for failure to exhaust administrative remedies because Plaintiff did not file any grievances against Superintendent Chappius.  (Dkt. 76-4 at 26).  Plaintiff does not directly address Defendants' argument.  (*See* Dkt. 82).

The Court finds that Plaintiff did not adequately exhaust his claims against Superintendent Chappius.  While it is not dispositive that Superintendent Chappius was not named in Plaintiff's grievances, Plaintiff did not file any grievances related to any particular actions taken by Superintendent Chappius, nor could prison officials have

discerned from Plaintiff's grievances that he was complaining of any alleged policy, formal or informal, adopted by Superintendent Chappius.  (*See* Dkt. 76-1 at 9-401).  Plaintiff did write a letter to Superintendent Chappius concerning the injuries he suffered in the assault by unknown assailants and requesting that Superintendent Chappius dismiss the misbehavior report Plaintiff received following the assault.  (Dkt. 80 at 38).  However, this letter alone is not enough to constitute administrative exhaustion.  Plaintiff failed to exhaust his administrative remedies because he failed to file a grievance asserting facts putting prison officials on notice that he was claiming Superintendent Chappius had violated his Eighth Amendment rights.

### G. The Conspiracy Claims Against Deputy Superintendent Brown, Deputy Superintendent Gabel, Captain Meyer, Senior Offender Rehabilitation Coordinator Szablewski, Senior Offender Rehabilitation Coordinator Wilkins, Senior Offender Rehabilitation Coordinator Richardson, Assistant Deputy Superintendent Franclemont, and Lieutenant Labedz

Plaintiff claims that there was a conspiracy within DOCCS to order a "retaliatory hit" on him.  (Dkt. 1 at ¶ 89; *see* Dkt. 17 at 23).  Defendants contend that the conspiracy claims against Deputy Superintendent Brown, Deputy Superintendent Gabel, Captain Meyer, Senior Offender Rehabilitation Coordinator Szablewski, Senior Offender Rehabilitation Coordinator Wilkins, Senior Offender Rehabilitation Coordinator Richardson, Assistant Deputy Superintendent Franclemont, and Lieutenant Labedz should be dismissed for failure to exhaust administrative remedies because Plaintiff's grievances do not allege a conspiracy.  (Dkt. 76-4 at 28).  Plaintiff argues that he filed grievances about actions that were taken to retaliate against him for filing grievances.  (Dkt. 82 at 17-18).

As previously noted, "the grievant need not lay out the facts, articulate legal theories, or demand particular relief." *Johnson*, 380 F.3d at 697 (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Further, a plaintiff "[does] not have to assert the existence of a conspiracy to exhaust his conspiracy claim; it is sufficient that his grievance adequately described the alleged misconduct." *Espinal*, 558 F.3d at 128. Accordingly, it is not dispositive that Plaintiff did not specifically assert a conspiracy claim in his grievances. What matters is whether the facts alleged in the grievances were sufficient to put prison officials on notice that the Defendants at issue had purportedly entered into an agreement to harm Plaintiff.

Here, Plaintiff filed multiple grievances regarding retaliation. (*See* Dkt. 76-1 at 9-402). On June 3, 2017, and June 4, 2017, Plaintiff filed a grievance alleging that he was given a urinalysis test after writing complaints about Sergeant Roberts. (*Id.* at 253-54). On June 8, 2017, Plaintiff stated that Lieutenant Herzick said that he was going to "whitewash" the grievance. (*Id.* at 214). Plaintiff filed another grievance on June 12, 2017, asserting that Plaintiff was subject to another urinalysis test and returned to his room being ransacked. (*Id.* at 218-19).

On July 19, 2017, Plaintiff complained that Deputy Superintendent Gabel, Senior Offender Rehabilitation Coordinator Wilkins, and Senior Offender Rehabilitation Coordinator Richardson retaliated against Plaintiff for filing grievances by writing misbehavior reports. (*Id.* at 169). Plaintiff complained on July 19, 2017, that Superintendent Eckert was complicit in the harassment and retaliation Plaintiff had been

receiving.  (*Id.* at 130).  Plaintiff then stated on July 23, 2017, that his misbehavior report was improperly labelled a Tier III.  (*Id.* at 167).

On July 26, 2017, Plaintiff again requested that his misbehavior report tier be reduced.  (*Id.* at 110-11).  Plaintiff alleged on July 26, 2017, that Superintendent Eckert violated his First Amendment rights by approving a mail watch in retaliation for grievances he had filed.  (*Id.* at 92-93).  These grievances were appealed in accordance with the three-step grievance procedure.  (*See id.* at 87-254).

In his grievances, Plaintiff did not name nor assert facts that point to Deputy Superintendent Brown, Captain Meyer, Senior Offender Rehabilitation Coordinator Szablewski, Assistant Deputy Superintendent Franclemont, and Lieutenant Labedz. Plaintiff accordingly has not exhausted a conspiracy claim as to these defendants.  But Plaintiff has described the misconduct as it relates to Deputy Superintendent Gabel, Senior Offender Rehabilitation Coordinator Wilkins, and Senior Offender Rehabilitation Coordinator Richardson.   Specifically, Plaintiff filed grievances stating that these individuals were all retaliating against him by writing misbehavior reports.  Plaintiff also said that Superintendent Eckert was "complicit" in the retaliation, suggesting a coordinated campaign. (Dkt. 76-1 at 130).  These grievances are sufficient to support an inference that these defendants were working in concert to accomplish a scheme of retaliation against Plaintiff.   Therefore, Defendants have not established their entitlement to summary judgment based on failure to exhaust administrative remedies with respect to the conspiracy claims against Deputy Superintendent Gabel, Senior Offender Rehabilitation Coordinator Wilkins, and Senior Offender Rehabilitation Coordinator Richardson.

For all these reasons, Defendants' request for summary judgment based on failure to exhaust is granted as to: (1) the retaliation claims against Superintendent Hughes and Lieutenant Labedz; (2) the Eighth Amendment conditions of confinement and failure to protect claims against Superintendent Chappius; and (3) the conspiracy claims against Deputy Superintendent Brown, Captain Meyer, Senior Offender Rehabilitation Coordinator Szablewski, Assistant Deputy Superintendent Franclemont, and Lieutenant Labedz.  However, Defendants' request for summary judgment based on failure to exhaust is denied as to: (1) the failure to protect claims against Officer Flint, Officer Pariso, and Officer Arndt; (2) the retaliation claims against Officer Flint, Officer Pariso, Officer Arndt, Senior Offender Rehabilitation Coordinator Szablewski, and Assistant Deputy Superintendent Franclemont; and (3) the conspiracy claims against Deputy Superintendent Gabel, Senior Offender Rehabilitation Coordinator Wilkins, and Senior Offender Rehabilitation Coordinator Richardson.

## III.  **Plaintiff's Retaliation Claims**

The Court now turns to Defendants' arguments regarding the merits of Plaintiff's claims.  Defendants argue that they are entitled to summary judgment on the merits of Plaintiff's retaliation claims, including because: (1) Plaintiff cannot demonstrate a causal connection in relation to Sergeant Roberts, Superintendent Eckert, Lieutenant Sowa, Lieutenant Herzick, Senior Offender Rehabilitation Coordinator Richardson, Senior Offender Rehabilitation Coordinator Wilkins, Senior Offender Rehabilitation Coordinator Szablewski, Assistant Deputy Superintendent Franclemont, and Deputy Superintendent

Gabel; and (2) there is no evidence that Deputy Superintendent Gabel's actions injured Plaintiff.  (*See* Dkt. 76-4 at 9-14).

It is well settled that prison officials may not retaliate against prisoners for exercising their constitutional rights.  *See generally Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977).  To make out a § 1983 retaliation claim, a prisoner must present allegations that (1) he engaged in constitutionally protected speech or conduct, (2) the defendant took adverse action against him, and (3) there was a causal connection between the protected speech or conduct and the adverse action.  *Espinal*, 558 F.3d at 128.

"[T]he filing of prison grievances is a constitutionally protected activity[.]"  *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003).  Regarding the third element of a retaliation claim—a causal connection—a fact-finder may infer an improper or retaliatory motive in the adverse action from facts that demonstrate: "(1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; [or] (4) statements by the defendant regarding his motive for disciplining the plaintiff."  *Shariff v. Poole*, 689 F. Supp. 2d 470, 479 (W.D.N.Y. 2010).  But the Second Circuit has "repeatedly held that temporal proximity alone is insufficient for a prisoner's retaliation claim to survive summary judgment."  *Morrow v. Bauersfeld*, No. 21-2928-CV, 2022 WL 17097590, at *2 (2d Cir. Nov. 22, 2022) (collecting cases); *see also, e.g., Williams v. King*, 763 F. App'x 36, 38-39 (2d Cir. 2019) ("The only evidence demonstrating a retaliatory motive is temporal proximity which, alone, is insufficient to defeat summary judgment.").

A.    **The Retaliation Claims Against Sergeant Roberts and Lieutenant Herzick**

Plaintiff alleges that Sergeant Roberts and Lieutenant Herzick, in retaliation for Plaintiff's filing of a grievance against Sergeant Roberts, retaliated by causing Plaintiff to be "subjected to repeated cell searches, as well as several urine tests during Ramadan, which interfered with his ability to observe that holy period." (Dkt. 17 at 16).  Defendants contend that Plaintiff has no evidence of a causal connection between his grievances and the cell searches and urinalysis tests.  (Dkt. 76-4 at 20).  Defendants argue that Plaintiff did not offer any testimony at his deposition asserting a causal connection between his grievances against Sergeant Roberts and Lieutenant Herzick and the cell searches and urinalysis tests.  (*Id.* at 20-21).  Plaintiff argues in opposition that he was subjected to repeated cell searches and urinalysis tests for filing two grievances about Sergeant Roberts. (Dkt. 82 at 21).

The Court agrees with Defendants that no reasonable juror could find a causal connection between Plaintiff's grievances about Sergeant Roberts and the cell searches and urine tests.  Plaintiff states that "after the incident with Sergeant Roberts his cell was searched, he was keeplock, [sic] and there was a constant barrage of harassment."  (Dkt. 81 at ¶ 114).  Plaintiff described that "these [searches and tests] occurred and were highly unusual following Sergeant Roberts' attack and Plaintiff sending a letter to Superintendent Eckert about the grievances he filed."  (*Id.*).  Further, Plaintiff "testified his cell was searched after he wrote a grievance against Sergeant Roberts."  (*Id.* at ¶ 115).  Plaintiff

then stated that he began receiving retaliatory cell searches and urinalysis tests. (Dkt. 1 at ¶ 66).

At the deposition, Plaintiff testified that Lieutenant Herzick, who was investigating the grievance Plaintiff wrote about Sergeant Roberts, told Plaintiff that he was planning to "whitewash" the grievance. (Dkt. 76-1 at 446). However, Plaintiff stated he did not "have any further problems with Lieutenant Herzick at Wende" after the Sergeant Roberts investigation. (*Id.* at 449).

Plaintiff does not identify any alleged retaliation by Lieutenant Herzick or Sergeant Roberts other than the fact that Plaintiff was purportedly subject to retaliatory cell searches and urinalysis tests. But Plaintiff has pointed to no evidence tying Lieutenant Herzick or Sergeant Roberts to the cell searches and urinalysis tests. It is not even clear from the record before the Court who conducted these searches and urinalysis tests. No reasonable juror could conclude, on the record before the Court, that Lieutenant Herzick or Sergeant Roberts, ordered or conducted these searches and tests.

Lieutenant Herzick's statement that he was going to "whitewash" the grievance, without more, does not provide insight into the motive for the cell searches and urinalysis tests. "Without evidence that an unnecessary statement by a prison guard contributed to some concrete threat to the prisoner's safety and welfare, the making of the statement does not rise to the level of First Amendment retaliation." *Davidson v. Bartholome*, 460 F. Supp. 2d 436, 445 (S.D.N.Y. 2006). On its face, Lieutenant Herzick's statement is unrelated to the alleged retaliation, and Plaintiff has pointed to no evidence connecting the two.

Plaintiff does not specifically note the temporal proximity of the cell searches and urinalysis tests with the grievances he filed against Sergeant Roberts, but the Court has considered this factor in its analysis.  Plaintiff filed a grievance alleging Sergeant Roberts assaulted him on May 25, 2017.  (Dkt. 76-1 at 247-49).  On June 12, 2017, Plaintiff filed a grievance stating that he was being subjected to retaliatory cell searches and urinalysis tests.  (*Id.* at 212-13).  While the temporal proximity of the grievances and alleged retaliatory action is close, "[s]uch circumstantial evidence of retaliation, [] without more, is insufficient to survive summary judgment."  *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011); *see, e.g., Williams*, 763 F. App'x at 38-39 (noting that temporal proximity alone "is insufficient to defeat summary judgment").

On the record before the Court, no rational jury could find in Plaintiff's favor on his retaliation claims against Lieutenant Herzick and Sergeant Roberts.  Defendants are entitled to summary judgment on these claims.

### B.    The Retaliation Claim Against Superintendent Eckert

Plaintiff claims that Superintendent Eckert imposed a mail watch on him in retaliation for Plaintiff's filing of grievances against Superintendent Eckert's staff.  (*See* Dkt. 17 at 17).  Defendants argue that Plaintiff failed to offer any evidence that the mail watch imposed by Superintendent Eckert was related to Plaintiff's grievances.  (Dkt. 76-4 at 21).  Plaintiff contends that Superintendent Eckert placed a mail watch on Plaintiff in retaliation for Plaintiff filing grievances about Sergeant Roberts, Lieutenant Herzick, and the cell searches and urinalysis testing.  (Dkt. 82 at 23).

- 33 -

Specifically, in his opposition, Plaintiff argues that the "correspondence watch was challenged in *In the Matter of the Application of Donte Mitchell v. Anthony J. Annucci*, Index No. 7723-17, Supreme Court, Albany County. The decision by the Court was that the written authorization signed by the facility superintendent failed to set forth the facts underlying its issuance for the correspondence watch and the specific reasons for the authorization were not disclosed at a subsequent hearing thereby failing to establish the correspondence watch authorization complied with 7 NYCRR 720.3 [e][1] and therefore finding the authorization invalid." (Dkt. 82 at 23; *see* Dkt. 80 at 46-48). Defendants have not replied to this argument, nor do they challenge the admissibility of the determination in this state court matter.

The Court agrees with Plaintiff that Superintendent Eckert failing to set forth the facts underlying the issuance of the mail watch allows for an inference of retaliation. *See e.g., Bennett v. Goord*, 343 F.3d 133, 138 (2d Cir. 2003) (reversing grant of summary judgment on prisoner's retaliation claim where "essentially all relevant adverse actions by DOCCS officials were subsequently found to have been unjustified"); *Lowrance v. Coughlin*, 862 F. Supp. 1090, 1103 (S.D.N.Y. 1994) (concluding that the prisoner plaintiff had "demonstrated that the exercise of his First Amendment rights was a substantial factor" in the defendants' actions because "the justification offered by the defendants was a pretext"). In other words, a juror could reasonably conclude that Superintendent Eckert's imposition of a mail watch for apparently pretextual or nonexistent reasons is evidence that the true motive was retaliation. The Court reaches this conclusion even though as discussed below, Plaintiff disclaimed at his deposition any "problems" with Superintendent Eckert.

(Dkt. 76-1 at 450). A jury must consider that testimony, the state court's determination that the mail watch was not factually supported, and any other relevant evidence, to assess whether Superintendent Eckert retaliated against Plaintiff. Thus, Defendants are not entitled to summary judgment on this claim.

### C.   The Retaliation Claim Against Deputy Superintendent Gabel

Plaintiff claims that Deputy Superintendent Gabel gave Plaintiff a retaliatory misbehavior report because of grievances Plaintiff filed concerning Deputy Superintendent Gabel's denial of Plaintiff's request to assist his stepbrother (a fellow inmate) with legal issues. (*See* Dkt. 17 at 17). Defendants argue that Plaintiff cannot establish a connection between Plaintiff's grievances and the misbehavior reports issued by Deputy Superintendent Gabel. (Dkt. 76-4 at 22).

Plaintiff sought permission to aid his stepbrother in a lawsuit. (Dkt. 1 at ¶ 72). Though Deputy Superintendent Gabel routinely granted such requests, Deputy Superintendent Gabel denied Plaintiff's request. (*Id.*). As a result, Plaintiff filed a grievance and wrote a letter to Prisoners' Legal Services. (*Id.*). Plaintiff testified at his deposition that he felt Deputy Superintendent Gabel "was being discriminatory because again, the request for assistance from other inmates who are other than legal clerk, she would routinely grant for other prisoners. So the fact that she didn't grant it for myself and [my stepbrother] just seemed to me be sort of kind of discriminatory so if I did write a complaint, it would have probably dealt with that issue. Because I had . . . nothing personal with her." (Dkt. 76-1 at 453).

Plaintiff's testimony is insufficient to establish a causal connection. Plaintiff did not testify that the filing of the grievances caused any retaliatory behavior. Plaintiff's only complaint against Deputy Superintendent Gabel occurred prior to his filing of the grievance. Nor has Plaintiff come forward with any other evidence from which a jury could conclude that Deputy Superintendent Gabel had a retaliatory motive.

Plaintiff argues in opposition to Defendants' motion that because "the correspondence watch that formed the basis of this misbehavior report was invalid and retaliatory, this misbehavior report and the resulting disposition were retaliatory." (Dkt. 82 at 24). But Deputy Superintendent Gabel is not alleged to have imposed the invalid correspondence watch, and Plaintiff has offered no explanation for how any allegedly retaliatory motive by Superintendent Eckert, who imposed the correspondence watch, can be imputed to Deputy Superintendent Gabel. He does not, for example, point to any evidence that Deputy Superintendent Gabel was involved in the imposition of the correspondence watch. Therefore, a rational jury could not find for Plaintiff on his retaliation claim against Deputy Superintendent Gabel, and Defendants are entitled to summary judgment on this claim.

### D. The Retaliation Claims Against Captain Meyer, Senior Offender Rehabilitation Coordinator Richardson, and Senior Offender Rehabilitation Coordinator Wilkins

Plaintiff claims that Captain Meyer, Senior Offender Rehabilitation Coordinator Richardson, and Senior Offender Rehabilitation Coordinator Wilkins, "in retaliation for Plaintiff's sending of letters of complaint to Supt. Eckert and Prisoners' Legal Services about staff misconduct, issued misbehavior reports against Plaintiff." (Dkt. 17 at 17).

Defendants argue that Plaintiff has not offered evidence that the misbehavior reports issued by Captain Meyer, Senior Offender Rehabilitation Coordinator Richardson, and Senior Offender Rehabilitation Coordinator Wilkins were connected to letters Plaintiff wrote about staff misconduct. (Dkt. 76-4 at 23). Further, Defendants assert that Plaintiff did not offer evidence of a connection between the letters and misbehavior reports in his deposition. (*Id.* at 24). Plaintiff contends that Senior Offender Rehabilitation Coordinator Richardson, at the direction of Captain Meyer, and Senior Offender Rehabilitation Coordinator Wilkins wrote misbehavior reports against Plaintiff for his filing of grievances and submitting of letters of complaint to Superintendent Eckert and Prisoners' Legal Services about staff misconduct. (Dkt. 82 at 24). Plaintiff further argues that the basis of these misbehavior reports was the invalid and retaliatory mail watch and, thus, that these subsequent misbehavior reports were retaliatory and should have been invalidated. (*Id.* at 25).

Plaintiff testified at his deposition that Captain Meyer, Senior Offender Rehabilitation Coordinator Richardson, at the direction of Captain Meyer, and Senior Offender Rehabilitation Coordinator Wilkins all wrote Plaintiff misbehavior reports. (Dkt. 76-1 at 455, 457, 459). Plaintiff claimed these misbehavior reports stemmed from an invalid mail watch. (Dkt. 1 at ¶¶ 75, 77). Plaintiff did not provide additional detail concerning the alleged causal connection.

As noted above, temporal proximity is not enough to allege a causal connection. *See e.g., Morrow*, 2022 WL 17097590, at *2; *Williams*, 763 F. App'x at 38-39. Plaintiff must show more. Here, Plaintiff fails to establish any causal connection. Plaintiff simply

asserts that because misbehavior reports were written, there was retaliatory action.  This is not sufficient to defeat a motion for summary judgment.

Plaintiff did file a grievance concerning these misbehavior reports after the fact.  But there is no causal connection when a plaintiff does not file a grievance against a defendant until after the misbehavior report has been issued.  *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 373 (N.D.N.Y. 2010).

Plaintiff also argues that because "the correspondence watch that formed the basis of these misbehavior reports was invalid and retaliatory, these subsequent misbehavior reports and resulting dispositions were retaliatory and should have been invalidated." (Dkt. 82 at 25).  In other words, Plaintiff's theory seems to be that if misconduct was discovered via the allegedly retaliatory mail watch, any action taken in response to that misconduct was also retaliatory.  But Plaintiff may not transfer retaliatory intent from one defendant's actions to another.[6]  In other words. the imposition of a retaliatory mail watch does not automatically mean that misbehavior reports stemming from that mail watch were

---

[6]     In the employment context, an employer may sometimes be held liable under the "cat's paw" theory of retaliation, when "an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action."  *Vasquez v. Express Ambulance Serv., Inc.*, 835 F.3d 267, 272 (2d Cir. 2016) (citation omitted).  However, the Second Circuit has never held that the cat's paw theory can be applied in the § 1983 context, and district courts in this Circuit have concluded that cat's paw liability is inconsistent with the requirement that a plaintiff show that each defendant in a § 1983 case violated the Constitution through his or her own individual actions.  *See Levine v. N.Y. State Police*, No. 1:21-CV-1181 BKS CFH, 2022 WL 1987845, at *15 (N.D.N.Y. June 6, 2022) (collecting cases); *see generally Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (explaining that direct participation in the § 1983 context means "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal" (citation omitted)).

retaliatory, especially when the same parties were not involved, there is no evidence of retaliatory intent, and Plaintiff engaged in the prohibited conduct resulting in the misbehavior reports. *See generally Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998) (noting that the plaintiff engaging in the prohibited conduct charged in the misbehavior report allowed the defendants to meet their "burden of demonstrating proper, non-retaliatory reasons for filing the misbehavior report").

Therefore, Defendants' motion for summary judgment as to the retaliation claims against Captain Meyer, Senior Offender Rehabilitation Coordinator Richardson, and Senior Offender Rehabilitation Coordinator Wilkins is granted.

### E.   The Retaliation Claim Against Lieutenant Sowa

Plaintiff claims that Lieutenant Sowa "in retaliation for Plaintiff's sending of letters of complaint to Superintendent Eckert and Prisoners' Legal Services about staff misconduct, erroneously characterized the retaliatory misbehavior reports issued by Captain Meyer, Senior Offender Rehabilitation Coordinator Richardson, and Senior Offender Rehabilitation Coordinator Wilkins, as Tier III infractions, which allow imposition of the most severe punishments." (Dkt. 17 at 17). Defendants contend that Plaintiff did not provide evidence that Lieutenant Sowa's misclassification of misbehavior reports was connected to letters Plaintiff sent. (Dkt. 76-4 at 24). Defendants note that Plaintiff only testified at his deposition that Lieutenant Sowa, "should have known that those misbehavior reports were either retaliatory or they weren't as serious as [she] had classified them because they ended up being responsible for why I ended up going to solitary confinement." (*Id.* at 24-25). Plaintiff argues Lieutenant Sowa misclassified

misbehavior reports to punish Plaintiff for grievances and letters he wrote and deter Plaintiff from filing future grievances and letters.  (Dkt. 82 at 25-26).

Plaintiff testified that Lieutenant Sowa was the person "responsible for reviewing my misbehavior reports and classifying them as tier three when they shouldn't have been." (Dkt. 76-1 at 461).  Plaintiff further stated that, at the time, he was going "through several bouts of harassment that I believe was retaliation in relation to the number of written complaints and grievances that I was filing.  So the fact that I had received three misbehavior reports, that in my opinion were false and bogus, he being the review officer, should have known that those misbehavior reports were either retaliatory or they weren't as serious as he had classified them because they ended up being responsible for why I ended up going to solitary confinement."  (*Id.*).

Plaintiff fails to provide any evidence at all as to how Lieutenant Sowa's actions constitute retaliation.  He has pointed to no evidence from which a juror could find in his favor on this claim but relies on conjecture and assumption.  This is insufficient to defeat a motion for summary judgment.  Defendants are entitled to summary judgment on this claim.

**F.**     **The Retaliation Claims Against Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy Superintendent Franclemont**

Plaintiff claims that Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy Superintendent Franclemont "imposed grossly disproportionate sentences for their guilty findings on Plaintiff's mail infractions, in retaliation for his filing of grievances."  (Dkt. 17 at 17).  Defendants argue that Plaintiff did not allege a causal

connection between his grievances and the "disproportionate sentence" given by Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy Superintendent Franclemont and that Plaintiff did not testify that Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy Superintendent Franclemont retaliated against Plaintiff. (Dkt. 76-4 at 25). Plaintiff contends that the misbehavior reports led to disciplinary hearings conducted by Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy Superintendent Franclemont. (Dkt. 82 at 26). Plaintiff argues that these disciplinary hearings were conducted in response to Plaintiff filing grievances and writing letters of complaint in addition to the imposition of the invalid mail watch. (*Id.*).

Plaintiff testified at his deposition that Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy Superintendent Franclemont were the hearing officers for Plaintiff's misbehavior reports. (Dkt. 76-1 at 463-64). Plaintiff stated that the problem he had with Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy Superintendent Franclemont was that he "explained to them in detail that those misbehavior reports were retaliatory." (*Id.* at 465). Plaintiff stated that he feels Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy Superintendent Franclemont "did not do their jobs." (Dkt. 81 at ¶ 124). None of the facts point to retaliation by Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy Superintendent Franclemont.

At most, Plaintiff testified in conclusory terms that the misbehavior reports were retaliatory. But Plaintiff did not point to particular evidence supporting the conclusion that Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy

Superintendent Franclemont retaliated against him.  Specifically, Plaintiff's testimony did not provide any insight into the alleged retaliatory behavior.  (*See* Dkt. 76-1 at 463-65).  Additionally, in his complaint, Plaintiff only noted that Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy Superintendent Franclemont "found [Plaintiff] guilty," and sentenced him to a penalty "disproportional to the offense."  (Dkt. 1 at ¶¶ 85-86).  Plaintiff did not show any causal connection nor identify facts that suggest Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy Superintendent Franclemont acted with retaliatory intent.  Therefore, Defendants' motion for summary judgment as to the retaliation claims against Senior Offender Rehabilitation Coordinator Szablewski and Assistant Deputy Superintendent Franclemont is granted.

## IV.  Plaintiff's Eighth Amendment Conditions of Confinement and Failure to Protect Claims Against Superintendent Eckert

Defendants also argue that they are entitled to summary judgment on Plaintiff's Eighth Amendment conditions of confinement and failure to protect claims against Superintendent Eckert because Superintendent Eckert did not allow a policy of widespread abuse and was not deliberately indifferent to staff brutality at Wende.

The Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations and citation omitted).  However, not every assault "translates into constitutional liability for prison officials responsible for the victim's safety."  *House v. City of N.Y.*, No. 18 Civ. 6693 (PAE)(KNF), 2020 WL 6891830, at *11 (S.D.N.Y. Nov. 24, 2020) (citation omitted).  "To state a claim under the Eighth Amendment on the basis

that a defendant has failed to prevent harm, a plaintiff must plead both (a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendant acted with 'deliberate indifference.'" *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020). "Deliberate indifference under the Eighth Amendment standard means the official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (alterations and quotations omitted).

Plaintiff claims that Superintendent Eckert "intentionally or through deliberate indifference created or allowed the policies and customs . . . that have resulted . . . in the unconstitutional abuse, mistreatment, and deprivations suffered by [Plaintiff.]" (Dkt. 1 at ¶ 143). Defendants argue that Superintendent Eckert did not allow widespread abuse and was not deliberately indifferent to a pattern and practice of staff brutality at Wende. (Dkt. 76-3 at ¶ 126). Defendants contend that Plaintiff, at most, testified that Superintendent Eckert was not responsive to letters describing harassment. (*Id.*). Plaintiff points to his deposition testimony with respect to Superintendent Eckert. (Dkt. 81 at ¶ 126).

At his deposition, Plaintiff testified that he does not recall having "any problems with [Superintendent Eckert] at any given time during [his] stay at Wende." (Dkt. 76-1 at 450). Plaintiff did not testify to anything else concerning Superintendent Eckert.

In his verified complaint, Plaintiff stated:

[Plaintiff] even wrote Eckert a couple times asking him to please tell his staff to leave him alone. Eckert was fully aware [Plaintiff] was experiencing problems. Instead of interceding on [Plaintiff's] behalf, Eckert conspired

> with Dep. Brown, Captain Meyer[], and other members of his staff to silence
> and get rid of [Plaintiff].

(Dkt. 1 at ¶ 69).

Plaintiff has failed to point to evidence supporting the conclusion that Superintendent Eckert acted with deliberate indifference.  Specifically, Plaintiff does not provide evidence that points to Superintendent Eckert being aware of facts from which an inference could be drawn that a substantial risk of serious harm existed.  Plaintiff's allegations about what Superintendent Eckert was aware of are insufficient to demonstrate a genuine issue of material fact, because Plaintiff has not demonstrated that he has any personal knowledge as to these facts.

Similarly, Plaintiff did not testify that he had any personal knowledge of any complicity by Superintendent Eckert in the wrongdoing of other DOCCS employees.  The only facts that Plaintiff has any genuine knowledge of are his own letters, but the mere fact of having received a letter does not demonstrate deliberate indifference.  *See H'Shaka v. O'Gorman*, 444 F. Supp. 3d 355, 376 (N.D.N.Y. 2020) (noting that the defendant receiving letters does not "constitute a basis for reasonably finding that [the defendant] was personally involved [in the alleged action]" as required by § 1983); *Douglas v. Annucci*, No. 14-CV-6018 CJS, 2022 WL 2306934, at *8 (W.D.N.Y. June 27, 2022) ("Receiving and forwarding an inmate's correspondence is insufficient to establish personal involvement by a prison official.").

Therefore, Defendants' motion for summary judgment as to the Eighth Amendment conditions of confinement and failure to protect claims is granted.

**V.**   **Plaintiff's Conspiracy Claims Against Deputy Superintendent Brown, Deputy Superintendent Gabel, Captain Meyer, Senior Offender Rehabilitation Coordinator Wilkins, Senior Offender Rehabilitation Coordinator Richardson, Senior Offender Rehabilitation Coordinator Szablewski, Assistant Deputy Superintendent Franclemont, and Lieutenant Labedz**

Defendants argue that they are entitled to summary judgment on Plaintiff's conspiracy claims against Deputy Superintendent Gabel, Senior Offender Rehabilitation Coordinator Wilkins, and Senior Offender Rehabilitation Coordinator Richardson.[7]

To prove a conspiracy claim under § 1983, a plaintiff must prove: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). However, courts apply "the intracorporate conspiracy doctrine to bar inmates' conspiracy claims against DOCCS." *Richard v. Fischer*, 38 F. Supp. 3d 340, 353 (W.D.N.Y. 2014); *see, e.g., Rahman v. Fischer*, No. 9:10-CV-1496 (LEK/TWD), 2012 WL 4492010, at *13 (N.D.N.Y. Sept. 28, 2012); *Cole-Hoover v. N.Y. Dep't of Corr. Servs.*, 02-CV-00826(M), 2010 WL 2510953, at *3-4 (W.D.N.Y. June 17, 2010); *Borrello v. N.Y. State Dep't of Corr. Servs.*, No. 00-CV-177A, 2004 WL 2191565, at *2 (W.D.N.Y. Sept. 27, 2004); *Nassau Cnty. Emp. "L" v. Cnty. of Nassau*, 345 F. Supp. 2d 293, 304-05 (E.D.N.Y. 2004). "The intracorporate conspiracy doctrine 'bars conspiracy claims against employees of entities

---

[7]   Defendants' motion for summary judgment as to Plaintiff's conspiracy claims against Deputy Superintendent Brown, Captain Meyer, Senior Offender Rehabilitation Coordinator Szablewski, Assistant Deputy Superintendent Franclemont, and Lieutenant Labedz was granted due to Plaintiff's failure to exhaust his administrative remedies.  In the alternative, Defendants' motion for summary judgment is also granted on the merits.

such as [DOCCS] (when those employees are alleged to have conspired solely with each other) unless, pursuant to the doctrine's 'scope of employment' exception, the employees were pursuing personal interests wholly separate and apart from the entity by whom they were employed.'" *Richard*, 38 F. Supp. 3d at 353 (quoting *Graham v. Peters*, No. 13-CV-705JTC, 2013 WL 5924727, at *5 (W.D.N.Y. Oct. 31, 2013)).

Plaintiff contends that Deputy Superintendent Brown, Deputy Superintendent Gabel, Captain Meyer, Senior Offender Rehabilitation Coordinator Wilkins, Senior Offender Rehabilitation Coordinator Richardson, Senior Offender Rehabilitation Coordinator Szablewski, Assistant Deputy Superintendent Franclemont, and Lieutenant Labedz "have become actors . . . in the conspiracy to harass and retaliate against [Plaintiff] for exercising his First Amendment rights." (Dkt. 1 at ¶ 144). Defendants argue that Plaintiff failed to testify to any evidence of a conspiracy at his deposition. (Dkt. 76-3 at ¶ 127). Plaintiff argues that he was not asked during his deposition about his conspiracy claims. (Dkt. 81 at ¶ 127).

Plaintiff is unable to point to evidence sufficient to support a finding of conspiracy. Plaintiff did not testify at his deposition to any evidence concerning a conspiracy. (*See* Dkt. 76-1 at 404-68). Plaintiff has come forward with no evidence of an act in concert to inflict an unconstitutional injury, nor an overt act done in furtherance of that goal causing damages. Plaintiff's argument that he was not asked about his conspiracy claims during his deposition is unavailing. It is well-established that "[i]n moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the

nonmoving party's claim." *Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The party that will bear the burden at trial must then "come forward with evidence that would be sufficient to support a jury verdict in his favor." *Id.* Plaintiff was required, in opposition to Defendants' motion for summary judgment, to explain what evidence he would rely on at trial to demonstrate a conspiracy. He has failed to do so.

Plaintiff also cannot overcome the intracorporate conspiracy doctrine. Specifically, the relevant employees are alleged to have conspired solely with each other and Plaintiff has not pointed to any evidence that the employees were pursuing personal interests separate from DOCCS.

For these reasons, Defendants' motion for summary judgment as to the conspiracy claims is granted.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 76) is granted except as to (1) the failure to protect claims against Officer Flint, Officer Pariso, and Officer Arndt; (2) the retaliation claims against Officer Flint, Officer Pariso, and Officer Arndt; and (3) the retaliation claim against Superintendent Eckert. The Clerk of Court is directed to terminate Superintendent Chappius, Deputy Superintendent Hughes, Deputy Superintendent Brown, Deputy Superintendent Gabel, Assistant Deputy Superintendent Franclemont, Captain Meyer, Lieutenant Sowa, Lieutenant Herzick, Lieutenant Labedz, Senior Offender Rehabilitation Coordinator Wilkins, Senior Offender Rehabilitation Coordinator Szablewski, and Senior Offender Rehabilitation Coordinator Richardson as defendants in this matter.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        September 25, 2024
              Rochester, New York